UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| CURT F. HANSFORD, | ) | CASE NO.: C06-1846-JLR |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| ALICE PAYNE, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

INTRODUCTION

Petitioner Curt Hansford is a Washington state prisoner who is currently serving a 281-month sentence for attempted murder in the second degree and related charges.  He has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent has filed an answer and petitioner has filed a response.  After considering the parties' submissions and the balance of the record, the court recommends that the petition be denied with prejudice.

BACKGROUND

The Washington Court of Appeals summarized the facts in petitioner's case as follows:

Jeff Cannell went to the home of a friend. Moments after Cannell arrived at

REPORT AND RECOMMENDATION
PAGE -1

the home, Hansford arrived with his friend Shawn McIntosh. Hansford was angry at Cannell for calling him a "snitch" and began arguing with Cannell. During the argument Cannell grabbed a baseball bat and hit Hansford.

Hansford and McIntosh left the scene but returned a few minutes later. While McIntosh waited in the car, Hansford approached Cannell and stated, "So I'm a snitch, huh, Jeff?" Cannell testified that Hansford then shot at him four or five times and fled. Other witnesses testified that they heard the shots but did not see the shooting.

Cannell was airlifted to Harborview Hospital and released the next day. At the hospital he refused to name the gunman. However, Cannell eventually provided a statement implicating Hansford.

Hansford fled to California and visited his sister, Constantine Price. Prior to his arrival, Hansford's father mailed Price newspaper articles that stated Hansford was responsible for the shooting, and described him as armed and dangerous. Hansford was arrested in California.

After several continuances, trial was set for March 12, 2001. On March 9, Hansford moved for substitution of counsel. He identified several items of discovery that he had unsuccessfully requested his attorney to obtain or share with him. His motion was denied. Hansford was found guilty and sentenced.

*State of Washington v. Hansford*, Unpublished opinion, 114 Wash. App. 1046 (2002) , 2002 WL 31689407 (Doc. #12, Ex. 2 at 2).

Petitioner appealed to the Washington Court of Appeals. The court affirmed petitioner's conviction in an unpublished opinion. (Doc. #12, Ex. 2). While his appeal was pending, petitioner filed his first personal restraint petition ("PRP"). (Doc. #12, Ex. 9). The Washington Court of Appeals stayed the PRP pending resolution of petitioner's direct appeal. After petitioner's appeal was concluded, the court considered and dismissed petitioner's first PRP. (Doc. #12, Ex. 13). Petitioner did not appeal the dismissal of the PRP to the Washington Supreme Court.

On November 24, 2003, petitioner filed his second PRP in state court. The Washington Court of Appeals transferred the PRP to the Washington Supreme Court. The Washington

REPORT AND RECOMMENDATION
PAGE -2

01 | Supreme Court dismissed petitioner's second PRP and issued a certificate of finality on November

02 | 7, 2005.  (Doc. #12, Ex. 33).

03 |     On November 8, 2005, petitioner filed the instant petition for a writ of habeas corpus

04 | under 28 U.S.C. § 2254.  (Doc. #3).  After receiving an extension of time, respondent filed an

05 | answer, along with the state court record, on February 3, 2006.  (Doc. #10).  Petitioner filed a

06 | response to the answer on March 6, 2006 (Doc. #13), and the matter is now ready for review.

07 | <u>GROUNDS FOR RELIEF</u>

08 |     Petitioner sets forth the following grounds for relief in his habeas petition:

09 | 1.    My due process rights have been violated in many ways.

10
11 | [A.] My Omnibus app. requested disclosure of informants or claim the privilege. When the State arrested the alleged complaining witness– on this action – the docket and soundex was destroyed – leaving me robbed of exculpatory evidence and violating state court rules.

12
13 | [B.] The Judge denied a CrR 3.5 hearing – yet conducted a "Tacit" hearing – allowing misinformation to be presented to my jury.

14 | 2.    Counsel failed to portray himself as a guardian of the law, and in doing so – rendered me ineffective assistance of counsel.

15
16 | [A.]  Phillips knowingly failed to present the lawful and written mandated maxim he was told to present i.e., the State must face that they have made a mistake.  See PRP in court files.

17
18 | [B.]  The newspaper articles were not a product of careful preparation; [they] introduced prejudicial and extraneous evidence not supported by the record, and mirrored the indictment.

19
20 | [C.] Entered legally erroneous jury instructions.

21 | 3.    Photo montage was unnecessarily suggestive – denied due process.

22 | 4.    Denied a 3.5 CrR hearing, redacted trial transcripts.

REPORT AND RECOMMENDATION
PAGE -3

01 (Doc. #3 at 6-9).

02       The court will address each ground for relief in turn.

03 <div align="center">DISCUSSION</div>

04 <u>Standard of Review</u>

05       Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may

06 be granted with respect to any claim adjudicated on the merits in state court only if the state

07 court's adjudication is *contrary to*, or involved an *unreasonable application* of, clearly established

08 federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d) (emphasis added).

09       Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

10 court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

11 or if the state court decides a case differently than the Supreme Court has on a set of materially

12 indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable

13 application"clause, a federal habeas court may grant the writ only if the state court identifies the

14 correct governing legal principle from the Supreme Court's decisions but unreasonably applies that

15 principle to the facts of the prisoner's case. *Id.*  In addition, a habeas corpus petition may be

16 granted if the state court decision was based on an unreasonable determination of the facts in light

17 of the evidence presented. 28 U.S.C. § 2254(d).

18       In *Lockyer v. Andrade,* 538 U.S. 63 (2003), the Supreme Court examined the meaning of

19 the phrase "unreasonable application of law" and corrected an earlier interpretation by the Ninth

20 Circuit which had equated the term with the phrase "clear error."  The Court explained:

21         These two standards, however, are not the same.  *The gloss of clear error*
*fails to give proper deference to state courts by conflating error (even clear error)*

22 *with unreasonableness.  It is not enough that a federal habeas court, in its*

01     *"independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."* . . . [A] federal habeas court may not issue the writ
02     simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.
03     Rather, that application must be objectively unreasonable.

04 538 U.S. at 68-69 (emphasis added; citations omitted).

05 Thus, the Supreme Court has directed lower federal courts reviewing habeas petitions to be

06 extremely deferential to decisions by state courts.  A state court's decision may be overturned only

07 if the application is "objectively unreasonable."  538 U.S. at 69.

08     <u>Petitioner's First Ground for Relief: Alleged Due Process Violations</u>

09     Petitioner's first ground for relief appears to be that his due process rights were violated

10 twice during his criminal proceedings: First, when exculpatory evidence was destroyed, and

11 second, when the trial judge denied a CrR 3.5 hearing.  Respondent argues that petitioner failed

12 to exhaust the first alleged due process violation in state court, and that the second alleged

13 violation lacks merit.

14     In order to present a claim to a federal court for review in a habeas corpus petition, a

15 petitioner must first have presented that claim to the state court.  *See* 28 U.S.C. § 2254(b)(1).  The

16 exhaustion requirement has long been recognized as "one of the pillars of federal habeas corpus

17 jurisprudence."  *Calderon v. United States Dist. Ct. (Taylor)* , 134 F.3d 981, 984 (9th Cir.)

18 (citations omitted), *cert. denied*, 525 U.S. 920 (1998).  Underlying the exhaustion requirement is

19 the principle that, as a matter of comity, state courts must be afforded "the first opportunity to

20 remedy a constitutional violation."  *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981).

21     In addition, a petitioner must not only present the state court with the *first* opportunity to

22 remedy a constitutional violation, but a petitioner must also afford the state courts a *fair*

REPORT AND RECOMMENDATION
PAGE -5

01   opportunity. *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982).

02   It is not enough that all the facts necessary to support the federal claim were before the state

03   courts or that a somewhat similar state law claim was made. *Harless*, 459 U.S. at 6. "[A] claim

04   for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as

05   well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 518 U.S.

06   152, 162-63 (1996).

07          Finally, a petitioner must raise in the state court all claims that can be raised there, even

08   if the state court's review of such claims is purely discretionary. *See O'Sullivan v. Boerkel*, 526

09   U.S. 838, 841-47 (1999).  In other words, a petitioner must invoke one complete round of a

10   state's established appellate review process, including discretionary review in a state court of last

11   resort, before presenting their claims to a federal court in a habeas petition. *Id.* at 842-44.  Thus,

12   in Washington state, a petitioner must seek discretionary review of a claim by the Washington

13   Supreme Court in order to properly exhaust the claim and later present it in federal court for

14   habeas review.

15          After reviewing the state court record, the court finds that petitioner's first alleged due

16   process violation – that exculpatory evidence was destroyed – was not presented to the

17   Washington Supreme Court in petitioner's second PRP (the only PRP to reach the Washington

18   Supreme Court).  (Doc. #12, Ex. 15).  Accordingly, petitioner failed to exhaust this issue.  In

19   addition, because more than one year has passed since his conviction became final, petitioner is

20   now procedurally barred from raising this claim in state court. *See* RCW 10.73.090.

21          When, as here, a petitioner has procedurally defaulted on a claim in state court, the

22   petitioner "may excuse the default and obtain federal review of his constitutional claims only by

REPORT AND RECOMMENDATION
PAGE -6

01    showing cause and prejudice, or by demonstrating that the failure to consider the claims will result

02    in a 'fundamental miscarriage of justice.'" *See Noltie v. Peterson,* 9 F.3d 802, 806 (9th Cir. 1993)

03    (citing *Coleman v. Thompson,* 501 U.S. 722 (1991)).   Petitioner has failed to show that "cause

04    and prejudice" exist excusing his default on the unexhausted claim.   Nor has he shown that failure

05    to consider the claims will result in a miscarriage of justice.   Accordingly, the first part of

06    petitioner's first ground for relief is barred from federal habeas review and should be denied.

07        Petitioner's second alleged due process violation appears to be based upon the trial court's

08    failure to hold a "CrR 3.5 hearing" to determine whether to admit statements made by petitioner

09    to the California officer who arrested him.   This claim appears to be identical to petitioner's fourth

10    ground for relief and the court will consider them both here.

11        Shortly after the shooting, petitioner was stopped in California by a state patrol officer.

12    At trial, the officer testified that his suspicions were aroused when petitioner accelerated his car

13    and turned onto a dead end road after passing the officer on a rural highway.   (Doc. #12, Ex. 34,

14    Transcript of March 14, 2001, at 225-28).   When the officer approached petitioner and asked him

15    his name, petitioner provided a false one and claimed not to remember his own birth date.   (*Id.* at

16    229).   The prosecutor used this fact in his closing argument to incriminate petitioner, asking jurors,

17    "why is [petitioner] lying to the cops about his name, unless he did something wrong?" (   *Id.*,

18    Transcript of March 19, 2001 at 733).

19        The rules governing criminal proceedings in Washington courts provide that "[w]hen a

20    statement of the accused is to be offered in evidence, the judge . . . *shall* hold or set the time for

21    a hearing, if not previously held, for the purpose of determining whether the statement is

22    admissible."   Superior Court Criminal Rules CrR 3.5 (emphasis added).   Thus, a hearing to

REPORT AND RECOMMENDATION
PAGE -7

01    determine the admissibility of a defendant's statement is mandatory. *See State v. Renfro*, 28 Wash.

02    App. 248, 253 (1981).  However, the failure to hold such a hearing does not render the statement

03    inadmissible if the record shows that the statement was voluntary. *See State v. Kidd*, 36 Wash.

04    App. 503, 509 (1983).[1]

05         It appears undisputed that the trial court did not hold a "CrR 3.5 hearing" to determine

06    whether to admit petitioner's statements to the California officer.  Although the prosecutor

07    announced that she intended to use the statement, defense counsel did not object and apparently

08    the trial court saw no need for a hearing.  (Doc. #12, Ex. 2 at 8).   In reviewing this issue on

09    appeal, the Washington Court of Appeals found that the statement was voluntary:  "Nothing in

10    the record before us indicates that [petitioner] made the statements under duress, coercion, or

11    inducement of any kind.  The record does not reflect any interrogation whatsoever." (*Id.*)

12         The sole evidence that petitioner presents here to support this claim is an affidavit from a

13    former juror, to which petitioner refers under his fourth ground for relief.  (Doc. #3 at 11).  In this

14    affidavit, Ms. Tarea Lujan, who served as a juror at petitioner's trial and later came to believe that

15    he was wrongly convicted, describes the arresting officer as having testified that "when he pulled

16    up behind the car being driven by [petitioner], he had his weapon drawn and pointed on the

17    suspects." (Doc. #12, Ex. 15, Attachment at 1).  This account differs markedly from the trial

18    transcript submitted by respondent, yet neither petitioner nor Ms. Lujan offer any explanation for

19    this discrepancy.

20         While the voluntariness of petitioner's statement would be questionable under Ms. Lujan's

21

22         [1] The voluntariness of a defendant's statement is also required by the Fifth and Fourteenth Amendments to the Constitution. *See Arizona v. Fulminate*, 499 U.S. 279, 282 (1991).

REPORT AND RECOMMENDATION
PAGE -8

01  account of the officer's testimony, the court is not willing to adopt her version of testimony over

02  the version reflected in the official transcript of the trial.  In addition, even if the affidavit were

03  given weight and the admission of petitioner's statement to the California officer were deemed

04  erroneous, it does not appear that such error had a "substantial and injurious effect or influence"

05  in determining the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

06  Although the prosecutor referred to petitioner giving a false name several times in closing

07  argument, the prosecutor placed greater emphasis on the testimony of the victim, petitioner's

08  sister, and other witnesses.  (Doc. #12, Ex. 34, Transcript of March 19, 2001 at 718-27).

09  Petitioner thus fails to demonstrate that the state court's failure to hold a CrR 3.5 hearing entitles

10  him to habeas relief.  Accordingly, petitioner's second due process claim and his fourth ground

11  for relief should be denied.

12  <u>Petitioner's Second Ground for Relief: Alleged Ineffective Assistance of Counsel</u>

13  In his third ground for relief, petitioner raises three sub-claims that his trial counsel was

14  ineffective.  After stating the appropriate standard for review, the court will address each of

15  petitioner's claims in turn.

16  <u>Standard of Review</u>

17  Claims of ineffectiveness of counsel are reviewed according to the standard announced in

18  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  In order to prevail, petitioner must

19  establish two elements:  First, he must establish that counsel's performance was deficient *i.e.*, that

20  it fell below an "objective standard of reasonableness" under "prevailing professional norms."

21  *Strickland*, 466 U.S. at 687-88 (1984).  Second, he must establish that he was prejudiced by

22  counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's

01 unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

02 U.S. at 694.

03       Regarding the first prong of the     *Strickland* test, there is a "strong presumption that

04 counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*,

05 466 U.S. at 689.   Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential."

06 *Id.*   The test is not whether another lawyer, with the benefit of hindsight, would have acted

07 differently, but whether "counsel made errors so serious that counsel was not functioning as the

08 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689.

09       In addition, the Supreme Court has stated that "a court need not determine whether

10 counsel's performance was deficient before examining the prejudice suffered by the defendant as

11 a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.   "The object of an ineffective

12 assistance claim is not to grade counsel's performance.   If it is easier to dispose of an ineffective

13 assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so,

14 that course should be followed." *Id.*

15       A.  Counsel "knowingly failed to present the lawful and written mandated maxim he was
told to present, i.e., the State must face that they have made a mistake.  See PRP. . . ."

16

17       The factual basis for petitioner's first claim is not self-evident.  By referring to his PRP,

18 petitioner appears to be incorporating the argument he raised in state court.  As best as the court

19 can discern, petitioner argued in state court that his attorney had ignored petitioner's requests

20 regarding strategy and discovery.  (Doc. #12, Ex. 15 at 2).  In his PRP, petitioner makes a variety

21 of accusations regarding counsel's inattention to his case, including counsel's failure to discuss

22 with petitioner which expert witnesses to use, counsel's failure to keep petitioner informed about

REPORT AND RECOMMENDATION
PAGE -10

01  the case, and counsel's failure to comply with petitioner's requests for information.  (*Id*. at 12).

02  However, neither here nor in his PRP in state court does petitioner provide any concrete examples

03  of these failures on the part of counsel.  Thus, petitioner fails to satisfy the highly deferential test

04  under *Strickland* and the state court decision rejecting this claim is not objectively unreasonable.

05  Petitioner's first claim should therefore be denied.

06      B.  "The newspaper articles [introduced by counsel] were not a product of careful
        preparation; [and] introduced prejudicial and extraneous evidence . . . ."

07

08      Petitioner next argues that counsel was ineffective because counsel introduced two

09  newspaper articles into evidence.  As described by the Washington Supreme Court in the Order

10  dismissing petitioner's PRP, the redacted articles reported that "[petitioner] had been charged with

11  shooting the victim, that the shooting was the culmination of [sic] feud between Mr. Hansford and

12  the victim over the victim calling Mr. Hansford a 'snitch,' and that the victim knew Mr. Hansford

13  by sight and knew Mr. Hansford was the one who shot him."  (Doc. #12, Ex. 29 at 2).

14      Petitioner's attorney introduced the articles in an apparent attempt to convince the jury that

15  petitioner's sister, who had read the articles shortly before petitioner visited her in California, had

16  become concerned about her brother's safety.  Counsel told the jury in his closing argument that

17  "I hope you don't consider the articles as proof of the matters [discussed therein]."  (Doc. #12,

18  Ex. 34, Transcript of March 19, 2001, at 748).  Rather, he argued, "[t]hey show what [petitioner's

19  sister] knew."  (*Id*.)  Counsel's strategy, apparently, was to argue that having read the articles,

20  petitioner's sister was concerned that petitioner might get hurt if he did not surrender to the police.

21  She therefore felt it necessary "to fabricate a defense for [petitioner] to protect him."  (Doc. #12,

22  Ex. 2 at 7).  When she talked to police, she tried to minimize her brother's involvement in the

REPORT AND RECOMMENDATION
PAGE -11

01  shooting. (*Id*.)

02      While any trial strategy, including this one, can be second-guessed, it is not the province

03  of this court to do so.  Under *Strickland*, a lower court reviewing a claim of ineffective assistance

04  of counsel must be highly deferential to counsel's decisions regarding trial strategy.  466 U.S. at

05  689.  Just because a strategy is unsuccessful does not mean that counsel was ineffective. *See Riley*

06  *v. Wyrick*, 712 F.2d 382, 385 (8th Cir. 1983).  Petitioner fails to show that counsel's strategy

07  regarding the newspaper articles fell outside "the wide range of reasonable professional

08  assistance."  466 U.S. at 689.  Accordingly, the state court decision rejecting this claim is not

09  objectively unreasonable, and petitioner's second claim that counsel was ineffective should be

10  denied.

11      C.  Counsel was ineffective because he "[e]ntered legally erroneous jury instructions."

12      Petitioner's final claim of ineffective assistance is that counsel agreed to jury instructions

13  that were "legally erroneous."  (Doc. #3 at 8).  Petitioner's claim apparently refers to the jury

14  instructions that offered the jury four options for convicting petitioner: first degree attempted

15  murder, second degree attempted murder, first degree assault, and second degree assault.  (Doc.

16  #2 at 7).  While the Washington Court of Appeals noted that petitioner had correctly argued that

17  first degree and second degree assault are not lesser-included offenses of first degree attempted

18  murder, the court also noted that counsel "reasonably sought to avoid the risk of giving the jury

19  a single choice between conviction for first degree attempted murder and acquittal." (*Id*.)  Indeed,

20  counsel's strategy appears to have paid off, as the jury convicted petitioner of second degree,

21  instead of first degree, attempted murder.

22      Therefore, petitioner cannot show prejudice under *Strickland*.  The state court decision

01  rejecting this claim is not objectively unreasonable, and petitioner's third and final claim of

02  ineffective assistance of counsel should be denied.

03  <u>Petitioner's Third Ground for Relief: Allegedly Suggestive Photo Montage</u>

04  Petitioner's final claim[2] is that the photo montage used to identify him was impermissibly

05  suggestive.  He argues that his face stood out among the six individuals in the array because his

06  "skull is blown-up the largest" and he was the only one with wet hair.   [3]  (Doc. #3 at 9).  Due

07  process requires exclusion of identification testimony if the testimony results from procedures that

08  are unnecessarily suggestive and that may lead to irreparably mistaken identification.  *See Stovall*

09  *v. Denno*, 388 U.S. 293 (1967), overruled on other grounds by *Griffith v. Kentucky*, 479 U.S. 314

10  (1987).  However, identification evidence derived from suggestive procedures may be introduced

11  if, under the totality of the circumstances, the evidence is nonetheless reliable.   *See Manson v.*

12  *Braithwaite*, 432 U.S. 98, 114 (1977).

13  Here, it is doubtful that the size of petitioner's skull or his hairstyle rendered the photo

14  montage impermissibly suggestive.  *Cf. Manson*, 432 U.S. at 116 (observing that "identifications

15  arising from *single*-photographic displays may be viewed in general with suspicion.")  However,

16  the court need not decide whether the photo montage used to identify petitioner was impermissibly

17  suggestive because even if it were, under the totality of the circumstances, the identification was

18  reliable.  The crucial factor here is that the witnesses who identified petitioner from the montage

19  ─────────────────────

20      [2] Petitioner's fourth ground for relief was discussed in combination with his first ground for relief.  *Supra* at 7-9.

21      [3] Although neither party cites to the photo montage in the record, a copy appears to be

22  attached as an exhibit to the *pro se* brief that petitioner filed in his direct appeal. (Doc. #12, Ex. 6, Attachment).

01 all had contact with petitioner prior to the shooting – in some cases, such as the victim, these

02 witnesses had known petitioner for several years.  Therefore, it is unlikely that they would have

03 been unduly influenced by any improper suggestiveness of the photo montage, and their

04 identification of petitioner appears to satisfy due process concerns.

05       Accordingly, the state court decision rejecting this claim is not objectively unreasonable,

06 and petitioner's final ground for relief should be denied.

07 <center>CONCLUSION</center>

08       For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be

09 denied with prejudice.  A proposed Order reflecting this recommendation is attached.

10       DATED this  7th  day of  April , 2006.

11

12                  Mary Alice Theiler
                 United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -14